Case 1:21-mj-00374-RMM  Document

Case: 1:21−mj−00374
Assigned To : Meriweather, Robin M.
Assign. Date : 4/14/2021
Description: COMPLAINT W/ ARREST WARRANT

STATEMENT OF FACTS

On January 6, 2021, your affiant, Bryon J. Speakes was on duty and performing my official duties as a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent since 2015 and, in additional to my regular duties, I am currently also tasked with investigating criminal activity that occurred in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, investigation, or prosecution of violations of Federal criminal laws.

The information contained in this affidavit is based on my knowledge of the investigation and information provided by other law enforcement officers. Because this statement of facts is being submitted for the limited purpose of establishing facts sufficient for the charges in the complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence exists of violations of the following statutes: 18 U.S.C. § 111(a)(1); 18 U.S.C. § 231(a)(3) (Civil Disorder); 18 U.S.C. § 1752(a)(1), (2), (4) (Physical violence on restricted grounds); 40 U.S.C. § 5104(e)(2)(F) (Violent Entry, act of physical violence on Capitol Grounds).

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around

1

2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

1. The Defendant's Assault on Federal Officers

At approximately 1:00 p.m., a crowd of violent rioters had assembled on the Lower West Terrace of the Capitol Grounds. U. S. Capitol Police ("USCP") had formed a line of bike racks extending from the North end of the Lower West Terrace to the South end, to act as a barrier against the crowd. Officers were standing watch behind this line and fending off repeated attempts by the rioters to pull on the bike racks, either with their hands or with ropes and straps.

In reviewing surveillance footage of this incident, your Affiant observed an individual—later identified as REED CHRISTENSEN (hereinafter, "CHRISTENSEN")—assault law enforcement officers by delivering strikes and pushing against several law enforcement officers. Your Affiant further observed CHRISTENSEN initiate the forcible removal of bike rack barriers that were preventing the rioters from moving closer to the U.S. Capitol building.

Surveillance footage shows that at approximately 2:08 p.m., CHRISTENSEN approached the bike-rack perimeter of the Lower West Terrace. CHRISTENSEN was wearing a red "Make America Great Again" hat, a grey winter parka with a Marmot logo on the back, blue jeans, and yellow leather gloves. *See Figure One.*



*Figure One*

At 2:20 p.m., CHRISTENSEN first tried to forcefully remove the bike rack barriers. At that time, a Metropolitan Police Department ("MPD") Officer deployed a chemical irritant ("OC spray") in the face of CHRISTENSEN in order to repel the barrier removal.

Despite receiving a directed stream of OC spray to his face, CHRISTENSEN forcefully pushed against the bike rack barriers, and against both USCP and MPD Officers. CHRISTENSEN then breached the bike-rack perimeter of the Lower West Terrace. *See Figure Two*.



*Figure Two*

USCP and MPD Officers pushed CHRISTENSEN back outside of the Lower West Terrace perimeter. For a period of approximately two minutes, CHRISTENSEN can be observed on Officer Chapman's BWC recovering from the irritant effects of the OC spray. During this time, USCP officers rendered aid to CHRISTENSEN by giving him a bottle of water to wash the irritant from his face.

MPD Officer Chapman's BWC shows that at 2:23 p.m., a large group of rioters first began to pull on the bike-rack perimeter to Officer Chapman's left side. The rioters, utilizing ropes and their hands, forcefully pulled the bike-rack perimeter away from the Officers. Seconds later, CHRISTENSEN charged through the perimeter and struck Officer Chapman (*Figure Three*). CHRISTENSEN then pushed against the body of a USCP Officer (*Figure Four*), and delivered fist strikes to a second USCP Officer (*Figure Five*).



*Figure Three*



*Figure Four*

6



*Figure Five*

2. Identification of Christensen

Law enforcement prepared a be-on-the-lookout ("BOLO") flyer composed of several still-images of the above-described footage that depicted CHRISTENSEN. This BOLO, labeled AFO-191, was published along with BOLOS of other individuals involved in the violence at the U.S. Capitol on January 6, 2021. Additionally, clips of video footage depicting some of CHRISTENSEN'S conduct was posted to YouTube and played on news broadcasts.

During the investigation, law enforcement received information from WITNESS-1 regarding AFO-191. WITNESS-1 has known CHRISTENSEN for several years and has had multiple opportunities to observe CHRSITENSEN'S physical appearance prior to January 6, 2021. WITNESS-1 contacted law enforcement after observing a video of AFO subject 191 on a national news network. WITNESS-1 recognized AFO subject 191 as CHRISTENSEN. WITNESS-1 was also aware that CHRISTENSEN often wore a grey winter parka, yellow leather gloves, and a red Make America Great Again hat, all of which were consistent in appearance with the clothing worn by AFO subject 191. WITNESS-1 knew that CHRISTENSEN traveled to Washington D.C. to participate in the events of January 6, 2021, however, s/he did not know if CHRISTENSEN breached the perimeter of the U.S. Capitol and/or assaulted law enforcement officers.

WITNESS-1 was able to provide your Affiant photographs of CHRISTENSEN. One set of photographs depicts CHRISTENSEN wearing a grey winter parka with a white logo (see *Figure Six*). Law enforcement was also able to view a video published by an independent journalist that

7

depicts AFO subject 191 shortly after being sprayed by the OC spray. It appears that CHRISTENSEN, as depicted in the photographs from WITNESS-1, is wearing the same grey winter parka as AFO subject 191. Moreover, CHRISTENSEN'S physical appearance is consistent with that of AFO subject 191.

Upon further inspection, a logo was observed on the back of the grey winter parka on both the video and photograph. That logo appears to indicate the parka was manufactured by Marmot Clothing Company. A snippet of the video provided by the independent journalist, on the left, is compared to the photograph provided by WITNESS-1, on the right, as *Figure Six*.



*Figure Six*

WITNESS-1 provided an additional photograph of CHRISTENSEN. In this photograph, CHRISTENSEN is wearing yellow working gloves that are consistent in appearance with those worn by AFO subject 191 during the assaults on the federal officers described above. Likewise, CHRISTENSEN'S physical appearance is consistent with that of Figure 6 and AFO subject 191



*Figure Seven*

As of March 30, 2021, the FBI has received approximately 15 tips regarding the identity of AFO 191 after a national press release by law enforcement on February 1, 2021. Some of these tips identified other individuals as the person depicted in AFO 191. Upon receiving the conflicting identifications, FBI analysts and law enforcement investigators queried among other things, the state driver's license information, criminal history convictions, and publicly available social media profiles of the approximately 15 individuals whose names were submitted as possibly being the person depicted in AFO 191. In many cases a law enforcement officer directly contacted the tipster for further information regarding the person depicted in AFO 191. After investigating the tips regarding the identity of AFO 191, FBI determined that these tips did not predicate further investigatory action because once the tips were compared to the known physical characteristics of AFO 191, the characteristics of the individuals did not correspond with the characteristics of AFO 191.

Your affiant has reviewed video footage and still photos from January 6, 2021 and the photos provided to FBI by WITNESS-1. I have compared the images to a DMV photograph of CHRISTENSEN. After reviewing the images, I believe that the person depicted in Figures 1 – 7 is likely CHRISTENSEN.

Additionally, available law-enforcement databases indicate that CHRISTENSEN lives in the Portland, Oregon area. A query of law enforcement databases confirmed that CHRISTENSEN flew from Portland, Oregon, International Airport on January 5, 2021, with a final destination of Regan National Airport. CHRISTENSEN returned to Portland on January 7, 2021, via Regan National Airport.

3. Charges

Based on the foregoing, your affiant submits that there is probable cause to believe that CHRISTENSEN violated 18 U.S.C. § 1752(a)(1), (2), and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and (4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds, or to attempt or conspire to do any of the foregoing. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that CHRISTENSEN violated 40 U.S.C. § 5104(e)(2)(F), which makes it a crime to willfully and knowingly engage in an act of physical violence in the Grounds or any of the Capitol Buildings.

Your affiant submits there is probable cause to believe that CHRISTENSEN violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Finally, your affiant submits there is probable cause to believe that CHRISTENSEN violated 18 U.S.C. § 111(a)(1), which makes it crime to forcibly assault, resist, opposes impede, intimidate, or interfere with any person designated in section 1114 of Title 18 while engaged in or on account of the performance of official duties. For purposes of Section 1114 of Title 18, a designated person means any officer or employee of the United States while engaged in the performance of official duties, or any person assisting such an officer or employee in the performance of such duties.

 

_____
Bryon J. Speakes, Special Agent
Federal Bureau of Investigation

*Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 14th day of April, 2021.*

_____
ROBIN M. MERIWEATHER
U.S. MAGISTRATE JUDGE